IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONICA W-D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20 C 6810 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Veronica W-D. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on May 23, 2017, alleging in both applications that she became disabled on April 1, 2017, due to pituitary adenoma, photophobia, anemia, vision impairment, and chronic pain. (R. 391-94, 443). Born in

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

1967, Plaintiff was 49 years old at the time of her applications, making her a younger person (under age 50). (R. 391); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). She subsequently changed age categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); 20 C.F.R. § 416.963(d). Plaintiff lives in a house with her two daughters and completed two years of college as well as a practical nursing program. (R. 50, 109-10, 444). She spent nine years as a health care worker before taking a position as a licensed practical nurse in December 2012. (R. 106, 445). Plaintiff stopped working on April 1, 2017 due to her conditions and has not engaged in any substantial gainful activity since that date. (R. 445).

The Social Security Administration denied Plaintiff's applications initially on July 26, 2017, and again upon reconsideration on October 30, 2017. (R. 135-78). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Deborah M. Giesen (the "ALJ") on July 11, 2018. (R. 100). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert. (R. 102-34). The ALJ issued an unfavorable decision on October 12, 2018 (R. 182-91), but the Appeals Council vacated that decision on September 9, 2019 and remanded the case to the ALJ for a new hearing. (R. 197-201). At the supplemental hearing on January 21, 2020, the ALJ heard testimony from Plaintiff, who was once again represented by counsel, and from vocational expert Cheryl R. Hoiseth (the "VE"). (R. 38-81). Shortly thereafter, on February 10, 2020, the ALJ found that Plaintiff's pituitary microadenoma, pseudotumor cerebri, anemia, obesity, vertigo, degenerative disc disease of the cervical and lumbar spine, fibromyalgia, migraine headaches, and depression are severe impairments, but that they do not alone

2

or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-19).

After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work with certain non-exertional limitations. (R. 19-28). The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC could not perform Plaintiff's past relevant work as a licensed practical nurse. (R. 28). The ALJ also agreed with the VE's testimony that Plaintiff can perform a significant number of other jobs available in the national economy, including office helper, mail sorter, and housekeeping cleaner. (R. 29-30). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the April 1, 2017, alleged disability onset date through the date of the decision. (R. 30). The Appeals Council denied Plaintiff's request for review on September 14, 2020. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in determining the physical RFC by relying on her own lay interpretation of objective evidence and omitting several relevant limitations; (2) made a flawed mental RFC assessment that did not properly account for her moderate limitations in concentration, persistence, or pace; and (3) erred in discrediting her subjective statements. Plaintiff also argues that the decision in this case is constitutionally defective because it violates the separation of powers clause. For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of Plaintiff's physical RFC.

## **DISCUSSION**

### A.     Standard of Review

Judicial review of the Commissioner's final decision is authorized by the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing this decision, the Court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

In making its determination, the Court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). When the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex*

4

*rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.     Five-Step Inquiry**

To recover DIB or SSI, a claimant must establish that she is disabled within the meaning of the Social Security Act.[2]  *Shewmake v. Colvin*, No. 15 C 6734, 2016 WL 6948380, at *1 (N.D. Ill. Nov. 28, 2016).  A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a).  In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520).  If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five.  *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

---

[2]     Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

5

**C.     Analysis**

    **1.     Physical RFC**

Plaintiff argues that the case must be reversed or remanded because in making the RFC determination, the ALJ improperly relied on her own lay interpretation of objective evidence without input from any medical professionals. This Court agrees. A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Anna-Marie L. v. Kijakazi*, No. 21 C 50354, 2022 WL 4610120, at *2 (N.D. Ill. Sept. 30, 2022) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found Plaintiff capable of performing a full range of light work with the following limitations: occasional balancing, stooping, kneeling, crouching, and crawling; occasional climbing of ramps and stairs; and no climbing of ladders, ropes, or scaffolds. (R. 19). Plaintiff also cannot work around unprotected heights, open flames, or unprotected dangerous machinery, and she can only be in an environment with a moderate noise level. (*Id.*). In reaching this conclusion, the ALJ considered the opinion evidence of record, which consisted of RFC assessments from two state agency consultants. On July 21, 2017, Bharati Jhaveri, M.D., determined that Plaintiff can engage in a full range of work at all exertional levels but cannot climb ladders, ropes, or scaffolds, cannot be exposed to extreme cold, and must avoid concentrated exposure to noise and hazards. (R. 139-41, 148-49). Vidya Madala, M.D., largely affirmed this

6

assessment on October 27, 2017 but did not limit Plaintiff's exposure to extreme cold and allowed for occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. (R. 161-63, 172-74).

The ALJ found both opinions only "somewhat persuasive," recognizing that neither physician had an opportunity to consider "substantially supplemented subsequent documentation and testimony" from November 2017 through November 2019. (R. 25). Most significantly, Drs. Jhaveri and Madala were unaware that Plaintiff suffers from degenerative disc disease of the lumbar and cervical spine, which the ALJ determined are severe impairments. As the ALJ noted, Plaintiff complained of back pain that radiated to her buttocks and legs during appointments at Aunt Martha's Hazel Crest Community Health Center on November 17, 2017, December 11, 2017, and February 27, 2018. She also exhibited tenderness of the paraspinal region at L3 and positive straight leg raise tests bilaterally, though her range of motion and strength were normal. The doctor prescribed cyclobenzaprine (Flexeril) and ibuprofen for pain, and referred Plaintiff for physical therapy ("PT"). (R. 22-23, 734-35, 737-38, 741).

On May 17, 2018, Plaintiff started treating at Access Community Health Clinic due to a change in her insurance. An exam that day was normal but she received refills of various pain medications, including tramadol (Ultram) and Flexeril. (R. 23, 779-80). By October 31, 2018, Plaintiff was still complaining of musculoskeletal pain so the doctor referred her to a pain clinic and recommended she complete additional PT. (R. 24, 967). At a follow-up appointment on November 28, 2018, Plaintiff continued to complain of back pain and was taking Tylenol #3 in addition to Flexeril and tramadol. (R. 23, 994-95). During PT sessions on December 14, 2018, February 5, 2019, and February 14, 2019,

7

Plaintiff had an active trigger point over the right piriformis, limited mobility and pain at L4-L5 and L5-S1, and difficulty with sit to stand transfers. (R. 1012, 1014, 1017). At the February 14, 2019 session she was visibly in pain. (R. 1012).

Then on August 16, 2019, Plaintiff was in a motor vehicle accident and went to the emergency department with neck, back, and upper extremity pain. (R. 23, 1081). Shortly thereafter on August 31, 2019, Plaintiff saw pain specialist Farooq A. Khan, M.D., complaining of lumbar, cervical, and thoracic pain she described as sharp, aching, throbbing, burning, cramping, and spasming. (R. 1385). On exam, Plaintiff had mild to moderate tenderness at L4-L5 and L5-S1; mild to moderate lumbosacral tenderness; mild to moderate tenderness at C3-C4, C4-C5 and C5-C6; minimally decreased stability secondary to pain; a slightly antalgic gait; and slow transitions. With respect to the lumbar spine, Plaintiff exhibited minimal limitation in flexion, moderate limitation in extension, moderate limitation in lateral bending, and moderate to severe limitation in rotation. (R. 23-24, 1386, 1387). In the cervical spine, she had mild limitation in flexion, mild limitation in extension, moderate to severe limitation in lateral bending, and moderate to severe limitation in rotation. (R. 24, 1387). Dr. Khan assessed cervicalgia, cervical radiculitis, lumbago, lumbar facet joint pain, lumbar radiculitis, and pain in the thoracic spine. He recommended over-the-counter analgesics in combination with Plaintiff's other prescription pain medications, referred her to PT 2-3 times per week for 4 weeks, and ordered MRIs of the lumbar and cervical spine. (R. 24, 1388).

The September 10, 2019 lumbar MRI showed: mild disc desiccation at L3-L4 with bilateral facet/ligamenta flava hypertrophy and trace right facet effusion; bilateral ligamentum flava/facet hypertrophy and right face effusion at L4-L5; and broad-based

8

right paracentral/foraminal disc extrusion at L5-S1 with disc material extending 0.6 centimeters posterior to the disc space superimposed on a diffuse posterior disc displacement combined with bilateral facet ligamentum flavum hypertrophy resulting in mild central canal stenosis and moderate bilateral foraminal stenosis. (R. 23, 1381-82). A cervical MRI taken the same day revealed: broad-based central posterior disc protrusion at C4-C5 with disc material extending 0.25 centimeters posterior to the disc space combined with bilateral uncovertebral and facet hypertrophy resulting in effacement of the ventral thecal sac; and shallow left paracentral disc displacement at C5-C6 with disc material extending 0.2 centimeters posterior disc space with resultant effacement of the ventral thecal sac. (R. 23, 1383-84).

At a follow-up appointment with Dr. Khan on September 24, 2019, Plaintiff reported that her pain had improved 15-20% with PT but still persisted mostly in the lumbar region radiating down to both legs with associated numbness, tingling, and weakness. (R. 24, 1390). An exam continued to show decreased stability secondary to pain, slightly antalgic gait, and slightly slow transitions. There was mild to moderate tenderness at L4-L5 and L5-S1, moderate tenderness of the paraspinous musculature, moderate facet joint tenderness at C3-C4, C4-C5 and C5-C6, and moderate tenderness in the cervical paraspinous. (R. 1391-92). In the lumbar spine, Plaintiff had moderate to severe limitation in flexion, moderate limitation in extension, moderate to severe limitation in lateral bending, and moderate limitation in rotation. (R. 1391). In the cervical spine, she had minimal to mild limitation in flexion, moderate limitation in extension, moderate limitation in lateral bending, and moderate to severe limitation in rotation. (R. 1392). Dr. Khan suggested Plaintiff get a lumbar transforaminal epidural steroid injection. (R. 1394).

9

At a November 20, 2019 PT session, Plaintiff exhibited reduced cervical flexion and extension and continued to have pain with ambulation. (R. 1201, 1203). As of the January 21, 2020 hearing, Plaintiff was still waiting for insurance to approve the steroid injection. (R. 66-67).

The ALJ recited much of this objective evidence but failed to explain how she determined that it translated into an RFC for light work with the stated postural restrictions. The Seventh Circuit has "said repeatedly that an ALJ may not 'play[ ] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). MRI results in particular often "fall within this category." *Rodney W. v. Kijakazi*, No. 20 C 50255, 2022 WL 17414958, at *4 (N.D. Ill. Dec. 5, 2022) (collecting cases). Here, the only physician who reviewed the September 2019 MRIs of Plaintiff's lumbar and cervical spine was Dr. Khan, but he did not offer an opinion as to Plaintiff's RFC or indicate that she is capable of engaging in light work. Rather than submit those MRIs to medical input, the ALJ took it upon herself to determine their significance and craft an RFC that was purportedly consistent with that evidence. This was improper. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) (remanding where the ALJ was not qualified to make his own determination that MRI results were consistent with his RFC assessment without the benefit of an expert opinion); *McHenry*, 911 F.3d at 871 (an ALJ may not "assess[] [an] MRI on his own without the assistance of a medical expert.").

In addition to the MRIs, the ALJ discussed and relied upon two years' worth of PT and other medical records in determining Plaintiff's RFC. Yet no physician of record reviewed that evidence or endorsed the limitations set forth by the ALJ. *See Theresa M.*

10

*v. Kijakazi*, No. 20 C 481, 2022 WL 4552093, at *4 (N.D. Ill. Sept. 29, 2022) (quoting *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013)) (remand required where "[n]o physician testified–no medical records [re]vealed–that [plaintiff] has the residual functional capacity ascribed to h[er] by the administrative law judge."). The Commissioner finds it significant that the state agency consultants "explicitly rejected the notion that plaintiff was debilitated by any of her physical conditions." (Doc. 25, at 21). As noted, however, Drs. Jhaveri and Madala had no knowledge of Plaintiff's degenerative disc disease of the lumbar and cervical spine or the MRI results, and the new diagnoses and tests arguably "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by the non-examining physician and by evaluating h[er]self the significance of [the subsequent] report." *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (internal quotations omitted).

Also unavailing is the Commissioner's argument, set out in a footnote, that Plaintiff's objection to the lack of medical review of substantial new evidence is "somewhat disingenuous." (Doc. 25, at 22 n.7). According to the Commissioner, since Plaintiff alleges her disability began in early 2017, "one might expect the evidence to establish disability without regard to the most recent records." (*Id.*). To begin, the ALJ found Plaintiff not disabled at any time from April 1, 2017 through the February 10, 2020 decision date (R. 30), meaning the entire period under review is relevant, along with all pertinent medical records. Moreover, the Commissioner's argument in no way addresses the concern raised here: that the ALJ determined Plaintiff's RFC based on "her own interpretation of medical evidence, which is an impermissible source." *Tobias B. v. Kijakazi*, No. 20 C 2959, 2022 WL 4356857, at *5 (N.D. Ill. Sept. 20, 2022) (citing *Moon*

*v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)). And contrary to the Commissioner's assertion, Plaintiff is not asking the ALJ to defer to any particular medical opinion. (Doc. 25, at 22). She simply wants the ALJ to fulfill her obligation to secure medical opinions that are necessary to inform a proper determination of the RFC. *See Nichole M. S. v. Saul*, No. 19 C 7798, 2021 WL 534670, at *7 (N.D. Ill. Feb. 12, 2021) (quoting *Chase v. Astrue*, 458 F. App'x 553, 557 (7th Cir. 2012)) ("It is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations.").

The Court offers no opinion as to the extent and limiting effects of Plaintiff's spinal impairments, or the correct interpretation of the MRIs and their impact on Plaintiff's functioning. But the ALJ's failure to obtain medical input regarding the significance of two years' worth of diagnostic tests and treatment records constitutes error, and so the case must be remanded for further consideration of Plaintiff's physical RFC.

### 2. Remaining Arguments

Having determined that remand is appropriate, the Court declines to reach Plaintiff's separation of powers argument under the doctrine of constitutional avoidance. *Judy M. v. Kijakazi*, __ F. Supp. 3d __, 2023 WL 2301448, at *6 (N.D. Ill. Feb. 28, 2023) (collecting cases). The Court likewise makes no finding of specific error with respect to Plaintiff's remaining arguments, but the ALJ should take the opportunity on remand to reconsider all aspects of Plaintiff's physical and mental RFC as appropriate, and evaluate her subjective statements regarding pain, fatigue, and migraines.

## **CONCLUSION**

For reasons stated above, Plaintiff's request to remand the case is granted, and Defendant's Motion for Summary Judgment [24] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: May 25, 2023

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge